*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD JOSEPH HINMAN,

Defendant-Appellant.

UNPUBLISHED
October 29, 2020

No. 347204
Genesee Circuit Court
LC No. 16-040468-FC

Before: STEPHENS, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under the age of 13), and two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (victim between 13 and 16 years of age). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for each conviction, with the CSC-I sentences to be served consecutively to the CSC-III sentences. We affirm defendant's convictions and sentences, but remand for modification of defendant's judgment of sentence to specify that the CSC-I sentences are to be served consecutively to each other, but concurrently with the CSC-III sentences.

Defendant's CSC-I convictions arise from two acts of digital penetration against 12-year-old AJ on July 10, 2016. The offenses allegedly occurred at AJ's home when defendant, whom AJ considered to be an uncle, visited her home for a family party. According to AJ, while playing in a pool, defendant touched her underneath her bathing suit and digitally penetrated her vagina, and he again digitally penetrated her in her bedroom after she went inside her house to change her clothing. Defendant's CSC-III convictions arise from a sexual assault against 13-year-old AC in 2008. According to AC, while she was staying at the home of defendant's mother, defendant sexually assaulted her while she was sleeping on a couch by penetrating her vagina with his finger and with his penis.

Defendant denied any inappropriate sexual touching of AJ, but admitted that he may have accidently touched her in the pool while wrestling with a group of other children in the pool. Defendant also denied any sexual activity with AC and claimed that he could not have done so because he was in jail at the time that incident was alleged to have occurred.

Defendant appeals as of right, raising issues in a brief filed by appointed appellate counsel and in a pro se brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief").

## I.  COUNSEL'S ISSUES

### A.  MRE 803(4)

Defendant first argues that he was denied a fair trial by the admission of hearsay statements from AJ and AJ's mother to Amy Mawhorter, a sexual assault nurse examiner (SANE), who examined AJ the day after defendant's alleged sexual abuse.  Because defendant did not object to Mawhorter's testimony regarding AJ's and the mother's statements, this issue is unpreserved.  We review unpreserved claims of evidentiary error for plain error affecting defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).  To qualify as a plain error, the error must be "clear or obvious."  *People v Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003); *Carines*, 460 Mich at 763.  A clear or obvious error is "one that is not 'subject to reasonable dispute.' "  *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted).  An error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings.  *Carines*, 460 Mich at 763.

Defendant also argues that defense counsel was ineffective for failing to object to Mawhorter's testimony.  Because defendant did not raise an ineffective-assistance claim in the trial court, our review of that issue is limited to mistakes apparent from the record.  *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004).  To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial.  *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994).  Defendant must overcome the presumption that the challenged action might be considered sound trial strategy.  *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991).  To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

Defendant argues that AJ's statements during the examination were hearsay and were not admissible under MRE 803(4), the hearsay exception for statements made for the purpose of medical diagnosis or treatment, because the examination was intended primarily for investigative purposes, not for the purpose of medical diagnosis or treatment.  We disagree.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MRE 801(c); *People v Dendel (On Second Remand)*, 289 Mich App 445, 452; 797 NW2d 645 (2010).  Hearsay generally is inadmissible, MRE 802, unless it falls under one of the exceptions in the Michigan Rules of Evidence.  MRE 803(4) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(4) **Statements Made for Purposes of Medical Treatment or Medical Diagnosis in Connection With Treatment.**  Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

In *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011), this Court rejected the defendant's argument that statements made to a nurse performing a rape-kit examination are not admissible under MRE 803(4), stating:

> Defendant also argues that statements the victim made to the nurse who conducted a rape examination should not have been admitted.  Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care.  This is true irrespective of whether the declarant sustained any immediately apparent physical injury.  *People v Garland*, 286 Mich App 1, 8-10; 777 NW2d 732 (2009).  Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment.  *Id*. at 9-10; *People v McElhaney*, 215 Mich App 269, 282-283; 545 NW2d 18 (1996).  Thus, statements the victim made to the nurse were all properly admissible pursuant to MRE 803(4).

Defendant argues that AJ's statements during the examination were not admissible under MRE 803(4) because the examination had an investigative purpose.  The fact that an examination is initiated in part to investigate a sexual assault is not dispositive.  *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014).  The relevant inquiry is whether the declarant's statements were reasonably necessary for medical diagnosis or treatment.  *Mahone*, 294 Mich App at 214-215.  In *Mahone*, this Court explained that "[p]articularly in cases of sexual assault in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment."  *Id.* at 215.

In this case, Mawhorter described examining AJ for physical injuries and to determine what medical treatment might be necessary.  Mawhorter explained that when examining a patient, she needs to ask the patient what happened to determine what type of examination to conduct and to determine what treatment or procedures might be necessary.  When she examined AJ, no physical injuries were apparent, but AJ complained of pain in her pelvic area.  Mawhorter found some redness or irritation to tissue above the clitoris.  Although the examination was conducted after AJ's mother contacted the police to report a sexual assault, the record discloses that a purpose of Mawhorter's examination was to diagnose a possible injury, and to determine whether AJ required treatment and what treatment was appropriate.  Because AJ's statements were reasonably necessary for medical diagnosis or treatment, the statements were admissible under MRE 803(4).

Defendant argues that the statements by AJ's mother during the examination were not admissible under MRE 803(4) because the mother was not the patient being examined. We disagree. The record indicates that while AJ was the patient being examined, and her mother encouraged her to talk to the nurse, the mother sometimes intervened when AJ was reluctant to speak. MRE 803(4) provides that "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history" are exceptions to the hearsay rule and admissible. The focus of the rule is on the purpose for which a statement is made. Nothing in the rule requires that a statement be made by the person who is receiving the medical treatment. Thus, as this Court observed in *People v Yost*, 278 Mich App 341, 362 n 2; 749 NW2d 753 (2008), "MRE 803(4) is not limited to statements made by the person being diagnosed or treated." Because the mother's statements were made in the context of assisting Mawhorter's medical diagnosis and treatment, they too qualified for admission under MRE 803(4).

Defendant complains that the mother's statement included a statement from an aunt who described seeing defendant in the hallway with a telephone. Defendant argues that the aunt's statement should have been excluded because it was double hearsay. Hearsay within hearsay is not admissible unless each level of the evidence satisfies an exception to the hearsay rule. *People v Hawkins*, 114 Mich App 714, 719; 319 NW2d 644 (1982); MRE 805. Although multiple levels of hearsay may be admissible under MRE 803(4), *Yost*, 278 Mich App at 362 n 2, the aunt's statement to AJ's mother was not made for the purpose of medical diagnosis or treatment. Thus, the aunt's statement does not qualify for admission under MRE 803(4). To the extent that the aunt's statement may be considered inadmissible hearsay, the erroneous introduction of that statement did not affect defendant's substantial rights because the statement merely indicated that the aunt saw defendant in the hallway with his phone. The aunt's statement did not indicate that defendant had been with AJ or in her room, and defendant admitted going inside the house after AJ went inside to use the bathroom. There is no reasonable basis for concluding that the aunt's limited statement affected the outcome of defendant's trial. *Carines*, 460 Mich at 763.

Defendant also argues that the admission of AJ's and the mother's statements violated his right of confrontation, US Const, Am VI; Const 1963, art 1, § 20. The Confrontation Clause bars the admission of testimonial hearsay if the declarant is unavailable for trial, unless the defendant had a prior opportunity to cross-examine the declarant. See *Garland*, 286 Mich App at 10. In this case, the two declarants, AJ and her mother, as well as Mawhorter, all testified at trial and defendant had an opportunity to confront them. Further, statements made to a SANE nurse are not testimonial where the primary purpose of the nurse's questions and examination is to meet an ongoing emergency. *Id.* at 11; see also *People v Spangler*, 285 Mich App 136, 154; 774 NW2d 702 (2009) ("to determine whether a sexual abuse victim's statements to a SANE are testimonial, the reviewing court must consider the totality of the circumstances of the victim's statements and decide whether the circumstances objectively indicated that the statements would be available for use in a later prosecution or that the primary purpose of the SANE's questioning was to establish past events potentially relevant to a later prosecution rather than to meet an ongoing emergency."). Where, as in this case, a victim's statements to a SANE nurse are reasonably necessary for medical diagnosis and treatment, they qualify as nontestimonial. *Garland*, 286 Mich App at 11. Accordingly, there was no Confrontation Clause violation.

We also reject defendant's related ineffective-assistance arguments. Because AJ's and her mother's statements were admissible under MRE 803(4) and did not violate the Confrontation Clause, any objection would have been futile. Counsel is not ineffective for failing to make a futile

-4-

objection. *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). To the extent that counsel could have objected to the aunt's statement, as related by AJ's mother, on the basis that it was inadmissible double hearsay, because that limited statement merely described seeing defendant using a phone in the hallway of the house and defendant admitted going inside the house to use the bathroom, defendant was not prejudiced by counsel's failure to object.

## B. MRE 803(2)

Defendant also argues that the trial court erred by allowing AJ's mother to testify what AJ told her on the night of the charged offenses. The trial court admitted AJ's statements to her mother under the excited utterance exception to the hearsay rule, MRE 803(2). We review a trial court's decision to admit evidence for an abuse of discretion. *Duenaz*, 306 Mich App at 90. An abuse of discretion occurs when a trial court's decision falls outside the range of principled outcomes. *Id*.

Defendant argues that AJ's statements to her mother were not admissible as excited utterances because too much time had passed and AJ made the statements after her grandmother had called AJ's mother and asked her to talk to AJ. We disagree.

MRE 803(2) provides that an exited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The requirements for admitting a statement as an excited utterance are "1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). "[I]t is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule. The question is not strictly one of time, but of the possibility for conscious reflection." *Id*. at 551. Although the passage of time is a relevant consideration, "there is no express time limit for excited utterances." *Id*. Admissibility depends not necessarily on how much time has elapsed since the startling event, but rather whether the declarant was still under the stress of excitement resulting from that event. "The trial court's determination whether the declarant was still under the stress of the event is given wide discretion." *Id*. at 552. The exception thus applies when fabrication under the circumstances is unlikely, not necessarily impossible.

In this case, AJ's grandmother testified that AJ called her on the night of the incident and was upset and crying so much that it took her about 20 minutes before she could begin to say what happened to her. Thereafter, the grandmother called AJ's mother and told her to talk to AJ. According to AJ's mother, she immediately went to speak to AJ, who was still "bawling her eyes out," and then AJ told her what had happened earlier that day. The testimony indicated that AJ's statements to her mother were made on the same day that she was allegedly sexually assaulted, which qualifies as a startling event. The testimony that AJ was "bawling her eyes out" when she made the statements indicates that she was still experiencing the emotional impact of the event when she made the statements. Accordingly, the trial court did not abuse its discretion by admitting AJ's statements to her mother under the excited utterance exception to the hearsay rule.

## C. JURY VOIR DIRE

Next, defendant argues that the prosecutor engaged in misconduct when she questioned a potential juror during voir dire regarding her experience working with victims of sexual assault,

including whether the juror believed that a victim's delay in reporting a sexual assault may make that person less believable. Because there was no objection to the prosecutor's questioning of the juror, this issue is unpreserved. Therefore, we review this issue for plain error affecting defendant's substantial rights. *People v Abraham,* 256 Mich App 265, 274-275; 662 NW2d 836 (2003).

During voir dire, Juror Number 121 informed the prosecutor that she worked with sexual assault victims, including children, and therefore did not know if she could be a fair juror in this case. In follow-up questions, the prosecutor asked the juror whether she felt a person would be less believable if the person delayed reporting a sexual assault. The juror responded that she did not believe that was true because sexual assault is difficult for some people to talk about and it is common that people do not report abuse. The prosecutor also asked the rest of the venire if they felt the same way. Defendant argues that the prosecutor's questioning of Juror Number 121 was improper because the prosecutor in effect was offering expert testimony through the juror, without following MRE 702. We disagree.

The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). As this Court explained in *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014):

> A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial. A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments.

A criminal defendant has a constitutional right to be tried by an impartial jury and jurors are presumed to be impartial unless the contrary is shown. *People v Miller*, 482 Mich 540, 547, 550; 759 NW2d 850 (2008). The purpose of voir dire is to elicit enough information for development of a rational basis for excluding any individuals who may not be impartial. Therefore, potential jurors are questioned in an effort to uncover any bias they may have that prevents them from fairly deciding the case. *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). "It is imperative, in securing the rights of the parties to an impartial jury, for the court to allow the elicitation of enough information so that the court itself can make an independent determination of a juror's ability to be impartial." *Id*. at 620.

In *People v Bailey*, 310 Mich App 703, 721-722; 873 NW2d 855 (2015), this Court declined to reverse when the prosecutor asked prospective jurors about why a victim may not report sexual abuse. This Court held that the questioning did not constitute plain error without further analyzing whether it was appropriate to explore that area during voir dire. With regard to a prosecutor's argument about delays in reporting by sexual abuse victims, this Court noted that jurors are permitted to view evidence in light of their common knowledge or experience. *Id*. at 722.

In this case, the challenged line of questioning occurred in the context of attempting to determine whether Juror Number 121 could be a fair and impartial juror. The juror had already

expressed concerns about whether she could be fair and impartial in this type of case, given her experience with sexual assault victims, including children. The prosecutor's questions, including the questions about delayed reporting, which would be an issue for the charges involving AC, were within the proper scope of voir dire. Accordingly, defendant has not established that the prosecutor's questioning of Juror Number 121 was plain error.

In his Standard 4 brief, defendant also argues that trial counsel was ineffective for not objecting to the prosecutor's questions during voir dire. Because the prosecutor's questions to Juror Number 121 were directed at determining whether she could be fair and impartial, and thus within the proper scope of voir dire, any objection by defense counsel would have been futile. Counsel is not ineffective for failing to make a futile objection. *Chambers*, 277 Mich App at 11.

## D.  OPINION TESTIMONY

Defendant next argues that the prosecutor improperly presented the opinion testimony of AJ's grandmother regarding whether she believed AJ made the allegations against defendant to get the grandmother's attention. Defendant also argues that it was improper to allow the grandmother to testify regarding AJ's allegations when the grandmother could not recall the exact words that AJ used to describe what defendant did to her. Because defendant did not object to the challenged testimony at trial, these claims are unpreserved. Therefore, we review these claims for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

As defendant correctly observes, it is generally improper for a witness to comment or provide an opinion on the credibility of another witness because credibility matters are to be decided by the jury. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). In this case, the grandmother was not asked to offer a blanket opinion regarding whether she believed AJ's allegations were credible. Rather, she was asked whether she believed AJ made the allegations in an effort to get the grandmother's attention, a subject that defense counsel had explored on cross-examination. Not only was the grandmother's testimony responsive to defense counsel's cross-examination, her opinion was relevant because only the grandmother was in a position to testify regarding how much attention AJ typically sought from the grandmother, and whether the grandmother gave AJ more or less attention than usual because of AJ's allegations. These were proper subjects to explore in light of defense counsel's cross-examination, which suggested that AJ may have made the allegations to her grandmother as a way of gaining her grandmother's attention. Considering the responsive nature of the testimony, defendant has not shown that it qualifies as plain error.

Defendant also has not shown that the grandmother's inability to recall AJ's exact words when describing the alleged sexual abuse by defendant rendered her testimony improper. The grandmother testified that she recalled the substance of what AJ said to her. The grandmother was not offering an "opinion" of the conversation. Further, the grandmother's testimony explaining the substance of what AJ revealed did not involve any commentary on whether she believed AJ's allegations were credible. Again therefore, defendant has not shown that this testimony constituted plain error.

## E. PROSECUTOR'S CONDUCT

Defendant argues that the prosecutor improperly shifted the burden of proof through the following remarks during closing argument:

> [*The Prosecutor*]: I want to talk very briefly about the testimony of the defendant. You heard in the beginning of course, we know that the defendant does not have to do anything. The defense doesn't have to do anything. They have no burden at all. Nothing, and you remember the defense attorney talking about he could clip his nails and that would be fine. He can. He could do that if he wanted.
>
> But when they choose to put on a case, it is fair to say they put on their best case. What they had was this. They had Ron and nothing more, and Ron again doesn't have a burden . . .
>
> [*Defense Counsel*]: Judge, I'm objecting because she is shifting the burden here.
>
> [*The Prosecutor*]: I am not shifting the burden. I have very clearly stated that I don't have to—I have the whole burden, but I am allowed to comment on the evidence as it came in.
>
> *THE COURT*: Overruled.
>
> [*The Prosecutor*]: Thank you, Your Honor.
>
> This is what they put forward and I agree, as he just said, that doesn't shift the burden. The burden is all mine, but Mr. Hinman felt that he needed to take the stand and tell his side of it and his side of it made no sense whatsoever.

Claims of prosecutorial misconduct are decided case by case and the challenged conduct must be viewed in context. *McElhaney*, 215 Mich App at 283. The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *Bahoda*, 448 Mich at 266-267. It is well-established that a prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such argument tends to shift the burden of proof. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). However, once a defendant testifies, it is not improper for the prosecutor to comment on the weaknesses of the defense's case or theory. *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995); *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001). As explained in *Fields*, 450 Mich at 115-116:

> In sum, prosecutorial comment that infringes on a defendant's right not to testify may constitute error. However, where a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant. Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof.

Thus, the Court of Appeals has correctly concluded that the prosecutor may comment on the weakness of defendant's alibi and may observe that the evidence against the defendant is "uncontroverted" or "undisputed," even if defendant is the only one who could have contradicted the evidence, or has failed to call corroborating witnesses, or proved what it said it would in its opening statement, and that the defendant has failed to "take advantage of available opportunities to pursue matters relevant to his alibi defense."

The nature and type of comment allowed is dictated by the defense asserted, and the defendant's decision regarding whether to testify. When a defense makes an issue legally relevant, the prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence. [Citations and footnotes omitted.]

In this case, the prosecutor was commenting on the strength of the defense's evidence, pointing out that it consisted entirely of defendant's own testimony, and the prosecutor thereafter discussed various problems or weaknesses with that testimony. The prosecutor repeatedly qualified her remarks by reminding the jury that defendant did not have any burden of proof and that the burden was on the prosecution to prove defendant's guilt. Viewed in context, the prosecutor's comments did not shift the burden of proof.

## F. CUMULATIVE ERROR

Defendant argues that he is entitled to a new trial on the basis of the cumulative effect of the multiple errors in this case. Even if a single error standing alone does not justify reversal, the cumulative effect of several errors can support reversal if the cumulative effect of the errors undermines confidence in the reliability of the verdict. *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). The test is whether the cumulative effect of multiple errors deprived the defendant of a fair and impartial trial. *People v Taylor*, 185 Mich App 1, 10; 460 NW2d 582 (1990). Absent the establishment of more than one error, there can be no improper cumulative effect. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999). In this case, our analysis of defendant's claims fails to show that his trial was infected by multiple errors. Accordingly, there can be no cumulative effect. Therefore, defendant is not entitled to relief on this basis.

## G. CONSECUTIVE SENTENCING

The trial court agreed that it was appropriate to exercise its discretion to impose consecutive sentences in this case. The court ordered defendant's two CSC-I sentences to be served concurrently with each other, but consecutive to defendant's two CSC-III sentences, which were to be served concurrently with each other. Defendant argues that the trial court erred by ordering his CSC-III sentences to be served consecutively to his CSC-I sentences. Because defendant did not object when the prosecutor argued at sentencing that the trial court had the authority to order the CSC-I sentences to be served consecutively to the CSC-III sentences, this issue is unpreserved. Thus, defendant is not entitled to appellate relief unless he can establish a plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

We agree that the trial court plainly erred by ordering the two CSC-I sentences and the two CSC-III sentences to be served consecutively to each other. Rather, the court was only authorized to order the CSC-I sentences to be served consecutively to each other. In this state, concurrent sentencing is the norm. A consecutive sentence may be imposed only if specifically authorized by statute. *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012). The statutory authority for the imposition of consecutive sentences in this matter is MCL 750.520b(3), which provides:

> The court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction.

Defendant's CSC-III convictions did not arise from the same transaction as the offenses that led to defendant's CSC-I convictions. Indeed, the CSC-III offenses were committed approximately eight years before defendant committed the CSC-I offenses. Accordingly, MCL 750.520b(3) did not allow the trial court to order the CSC-III sentences to be served consecutively to the CSC-I sentences. As plaintiff concedes, it was plain error to order those sentences to be served consecutively. Instead, the only option for consecutive sentencing was to order the sentences for the two CSC-I convictions involving AJ to be served consecutively if those convictions arose from the same transaction.

In *Bailey*, 310 Mich App at 723-725, this Court addressed what constitutes "arising from the same transaction" for purposes of MCL 750.520b(3) and stated:

> The statutory language clearly limits this authority to cases in which the multiple offenses arose from the "same transaction," and the relevant caselaw is consistent with that legislative determination. In *Ryan*, 295 Mich App at 393, we held that two acts of CSC-I occurred in the same transaction when, while the victim's stepmother was at a wedding, the defendant (the victim's father), "called [her] into his bedroom and demanded that she remove all of her clothing" and "put his penis in her vagina and thereafter placed his penis in her mouth, leading to ejaculation." In *People v Brown*, 495 Mich 962, 963 (2014), the Supreme Court vacated the trial court's order that defendant serve each of his seven sentences for CSC-I consecutively, directing that only three of the sentences could be imposed consecutively as arising from the same transaction. In *Brown*, the defendant was charged with, and convicted of, seven counts of CSC-I against his granddaughter, and the trial court imposed a consecutive sentence for each one. See *People v Brown*, unpublished opinion per curiam of the Court of Appeals, issued July 30, 2013 (Docket No. 308510), p 3, vacated and remanded 495 Mich 962 (2014). The Supreme Court reversed, stating that it had reviewed the record and that "at most" only three of the seven sentences could be imposed consecutively. *Brown*, 495 Mich at 962-963 (emphasis omitted). While we do not have access to the trial court record in that case, the prosecution's brief to this Court in *Brown* detailed a total of seven criminal penetrations perpetrated by the defendant, against the same victim, over approximately 10 days during three separate incidents. Three of the penetrations occurred in the course of a single ongoing assault, thus allowing the sentences for the second and third penetrations of that transaction to each be imposed consecutively to the sentence for the first and to each other. During a separate transaction, two penetrations occurred, allowing the sentence for the

second to be imposed consecutively to the sentence for the first. In that seven-assault case, therefore, three sentences could each be imposed consecutively to the other four sentences and to each other. While we cannot be certain that this was the basis for the Supreme Court's decision, we can be certain that the Court concluded that four of the penetrations within that 10-day period were not part of the "same transaction," even though they were close in time and demonstrated ongoing child sexual abuse of the same victim. It is also consistent with *Ryan's* reliance on *People v Nutt*, 469 Mich 565, 578 n 15; 677 NW2d 1 (2004), for the principle that "[i]t is not an unfrequent occurrence, that the same individual, at the same time, and in the same transaction, commits two or more distinct crimes . . . ." (Quotation marks and citation omitted.)

In sum, we hold that an ongoing course of sexually abusive conduct involving episodes of assault does not in and of itself render the crimes part of the same transaction. For multiple penetrations to be considered as part of the same transaction, they must be part of a "continuous time sequence," not merely part of a continuous course of conduct. *Brown*, 495 Mich at 963; *Ryan*, 295 Mich App at 402-403. [Footnotes omitted.]

In this case, the record demonstrates that defendant's two CSC-I convictions arose from the same transaction. Both offenses involved the same victim, occurred on the same day, and were committed during a family party as part of a continuous time sequence. AJ described defendant sexually penetrating her when she was in the pool with defendant. After AJ left the pool to get away from defendant, she went inside the house to change from her bathing suit into other clothing. Defendant entered her bedroom and committed the second act of CSC-I while AJ was in her bedroom. While the record does not indicate how much time elapsed between the two incidents, and AJ was not sure if she sat outside first before going inside to change her clothing, the testimony established a continuous sequence of events connecting both incidents. Accordingly, the facts supported the imposition of consecutive sentences under MCL 750.520b(3) for the two CSC-I convictions.

In sum, although consecutive sentencing was authorized under MCL 750.520b(3), the trial court erred when it ordered the sentences for the two CSC-I convictions (Counts I and II) to be served consecutively to the sentences for the two CSC-III convictions (Counts III and IV). Instead, the trial court should have ordered the sentences for Count I and II to be served consecutively with each other, but concurrently with the sentences for Counts III and IV. This result does not change the amount of time defendant is required to serve, because the court imposed the same sentences for all four convictions and defendant still must serve two consecutive terms of 25 to 50 years, to be served concurrently with the remaining terms of 25 to 50 years. Accordingly, resentencing is not required. Instead, we remand for modification of defendant's judgment of sentence to specify that the two CSC-I sentences are to be served consecutively, but concurrently with defendant's sentences for CSC-III.

-11-

## II. DEFENDANT'S STANDARD 4 BRIEF

## A. AMENDMENT OF THE INFORMATION

Defendant argues that the prosecutor improperly amended the information to change the date of the offenses involving AC from September 2008 to 2008 generally. Because defendant did not object to the amendment of the information, this issue is unpreserved. Therefore, we review the issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

The information is required to specify "[t]he time of the offense as near as may be." MCL 767.45(1)(b). If a defendant moves for a specific time in order to meet the charge, it is within the trial court's discretion to determine "when and to what extent specificity will be required." *People v Naugle*, 152 Mich App 227, 233; 393 NW2d 592 (1986). Factors to consider include "(1) the nature of the crime charged; (2) the victim's ability to specify a date; (3) the prosecutor's efforts to pinpoint a date; and (4) the prejudice to the defendant in preparing a defense." *Id.* In *Naugle*, this Court stated that "[w]here the facts demonstrate that the prosecutor has stated the date and time of the offense to the best of his or her knowledge after undertaking a reasonably thorough investigation, we would be disinclined to hold that an information or bill of particulars was deficient for failure to pinpoint a specific date." *Id*. at 234. This Court rejected the defendant's argument that he was entitled to relief because of inconsistencies regarding the date of the charged offense, stating

> Defendant next asserts that the prosecution failed to establish the dates of these offenses beyond a reasonable doubt. However, time is not an element of a sexual assault offense. *People v McConnell*, 122 Mich App 208, 212; 332 NW2d 408 (1982), rev'd on other grounds, 420 Mich 852 (1984). Moreover, defendant's argument is primarily based on inconsistencies in complainant's testimony with respect to the dates. We note that complainant's testimony as to dates was corroborated by other witnesses. In any event, we believe that any inconsistencies have affected the weight the jury chose to accord her testimony, but would not necessarily have negated its substance. We are not prepared to assume the jury's role of weighing the evidence or of assessing complainant's credibility. [*Naugle*, 152 Mich App at 235-236.]

In this case, defendant was similarly charged with sexual assault and the date of the alleged assaults was not an element of the offenses. Because of the passage of time—approximately 10 years by the time of trial—AC was unable to specify a specific date of the offenses. The prosecution was able to narrow the time period to sometime in 2008, and argued that the offenses likely were committed after defendant's release from jail in November 2008. Defendant never moved for a specific time period in order to meet the charges nor argued that he was unable to respond to the charges without further information regarding the date of the alleged offenses. Considering these factors, defendant has not established that it was plain error to amend the information to specify generally that the offenses involving AC were committed in 2008. Any inconsistencies regarding dates in the testimony at trial affected only the weight of the testimony. Therefore, defendant is not entitled to relief with respect to this unpreserved issue.

-12-

## B. PROSECUTORIAL MISCONDUCT

Defendant next raises several claims of misconduct by the prosecutor during closing argument and opening statement. Only defendant's challenge to the remarks during opening statement was preserved with an appropriate objection at trial. We review that preserved claim to determine if the prosecutor's remarks denied defendant a fair trial. *Abraham,* 256 Mich App at 272. Defendant's unpreserved claims are reviewed for plain error affecting defendant's substantial rights. *Id.* at 274-275.

A prosecutor is afforded great latitude during closing argument. A prosecutor may not make a statement of fact that is unsupported by the evidence, but she is permitted to argue the evidence and reasonable inferences arising from the evidence in support of her theory of the case. *Bahoda,* 448 Mich at 282; *People v Ackerman,* 257 Mich App 434, 450; 669 NW2d 818 (2003). A prosecutor is not required to phrase his or her arguments in the blandest of terms, but may use "hard language" when the evidence supports it. *Bahoda,* 448 Mich at 282; *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). It is improper for a prosecutor to express personal knowledge or a personal belief regarding the credibility of a witness, or to vouch for the credibility of a witness by implying some special knowledge about the witness's truthfulness. *Bahoda,* 448 Mich at 276; *People v Meissner,* 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas,* 260 Mich App 450, 455; 678 NW2d 631 (2004). However, a prosecutor may comment on a witness's credibility and argue from the evidence that a witness is credible. *Id.*

Defendant argues that the prosecutor improperly commented on AJ's forensic interview during closing argument. Although evidence was introduced that AJ participated in a forensic interview, the contents of that interview were not introduced. During closing argument, the prosecutor remarked that AJ had been questioned about the allegations several times and consistently gave the same account of defendant's conduct each time. On appeal, defendant challenges the prosecutor's remark that "[AJ] told grandma, told mom, told an officer, told a SANE nurse and then ultimately came here and told twice, once at a prelim and once here, and the Weiss interview in between, the forensic interview which we can't share with you, but that girl all those times said the same thing." Defendant argues that this remark suggested that AJ's statements during her forensic interview were also consistent with her other statements, which was improper because her forensic interview statements were never introduced at trial.

We agree that because the substance of AJ's forensic interview was not introduced at trial, it would have been improper for the prosecutor to argue that AJ's statements during her forensic interview were consistent with her other accounts of defendant's conduct. However, the prosecutor's remarks did not clearly make that assertion. The prosecutor noted that AJ had given accounts of defendant's conduct on several occasions, including to her grandmother, her mother, a police officer, a SANE nurse, and at trial and at the preliminary examination. These were all matters of evidence at trial. The prosecutor also noted that in between these events, AJ also attended a forensic interview. This was also a matter of evidence, it having been mentioned by Detective Williams and by AJ on cross-examination by defense counsel. In her closing remarks, apart from mentioning that AJ underwent a forensic interview, the prosecutor never revealed the substance of AJ's statements during that interview. In fact, the prosecutor specifically told the jury that AJ's statements during that interview could not be shared. To the extent that the prosecutor's comments could have been interpreted as implying that AJ's statements during the forensic interview were also consistent with her other statements, an appropriate instruction on

-13-

timely objection could have cured any perceived prejudice. See *People v Williams,* 265 Mich App 68, 70-71; 692 NW2d 722 (2005) (this Court will not reverse if the prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction from the trial court), aff'd 475 Mich 101 (2006). Indeed, even without an objection, the trial court instructed the jury that it was only to consider the properly admitted evidence, and that the attorney's statements are not evidence. These instructions, together with the prosecutor's statement informing the jury that the contents of AJ's forensic interview could not be shared, should have been sufficient to protect defendant's substantial rights. Therefore, defendant is not entitled to appellate relief with respect to this issue.

Further, because the challenged remarks did not involve a clear attempt to inform the jury of the contents of AJ's forensic interview, and the prosecutor specifically informed the jury that the contents of that interview could not be shared, defense counsel's failure to object to the remarks was not objectively unreasonable. Moreover, given the trial court's instruction that the attorneys' statements are not evidence, defendant was not prejudiced by counsel's failure to object. Therefore, defendant's related ineffective-assistance claim also cannot succeed.

Defendant also challenges the following remarks by the prosecutor during closing argument:

> And when she tells, she is still hysterical, she is still crying, and she's telling what happened to her grandma, and then she's telling the same thing to her mother. Then she's telling that to an officer and a SANE nurse, and when she gets to that SANE nurse, what does the nurse find that's important? She's got redness under her clitoral hood and there's no explanation for that other than somebody was touching her there. There's an injury that can be seen by the SANE nurse, and she sees it, and she notes it, and it's consistent with what this girl said happened to her.

Defendant argues that these remarks were improper because there was no evidence connecting the redness observed by Mawhorter to the digital penetration described by AJ. We disagree. AJ told Mawhorter that defendant digitally penetrated her vagina. Mawhorter described her findings in her examination of AJ as follows:

> *Q.* Okay, and you also do a physical examination to look for injury, correct?
>
> *A.* Correct.
>
> *Q.* And was there anything noted in this case?
>
> *A.* I'm going to refer back to the report. One of the initial areas that there was pain was just above the pelvic area. She just said she had some tenderness when we asked her about that and it was no increase with palpation. No marks there, and then referring to this, there was some slight redness or irritation area to the clitoral hood.

Mawhorter agreed that the redness on the clitoral hood was evidence of trauma.

While defendant is correct that Mawhorter never testified that the redness she found was caused by digital penetration, it was reasonable for the prosecutor to make that connection. That

-14-

is, the prosecutor could reasonably infer that the testimony regarding the trauma to the clitoral hood was consistent with AJ's description of defendant's acts of digital penetration. Accordingly, the prosecutor's remarks were not improper. Further, because the prosecutor's remarks were supported by the evidence and reasonable inferences arising therefrom, defense counsel was not ineffective for failing to object to the remarks. Any objection would have been futile. *Chambers*, 277 Mich App at 11.

Defendant also argues that the prosecutor made argumentative and inflammatory remarks during opening statement. Defendant challenges the following portion of the prosecutor's opening statement:

When my youngest son who is 12 was probably about five or six, he went through a phase where he was incredibly scared of monsters. They were everywhere. They were in his closet. They were under his bed and every single day we had to go through a ritual of getting out a blue flashlight. I don't know how we put it together, but we got a blue flashlight, and we need a vanilla spray, and we need all of these things to check in all of those places to make sure that he was safe to go to bed, and if we didn't do it, if we skipped a step, he would toddle out and tell us that we hadn't done the master spray, or we hadn't shown the blue light and we had to start over.

As a parent, you do everything in your power to keep your kids safe, even these things like this that are like blue flashlights and monster spray, and what do you do as a parent when the threat isn't just a monster—

[*Defense Counsel*]: Judge, I object. This is argument.

[*The Prosecutor*]: Your Honor, I have one sentence before I will continue.

*THE COURT*: I'll overrule the objection.

[*The Prosecutor*]: Thank you, Your Honor. What do you do as a parent when the threat is real? And that's what this case is about. This case is about a real threat in a real set of households and the common thread in those households is that Uncle Ron has access to children.

Opening statement is the appropriate time to state the facts that the prosecutor believes will be proven at trial. *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010); *People v Moss*, 70 Mich App 18, 32; 245 NW2d 389 (1976). It is apparent that the prosecutor's story about her son did not involve facts the prosecutor intended to introduce at trial. Contrary to what defendant asserts, however, the remarks were not calculated to inflame the jury's passions or to cause the jury to be unfairly biased against defendant. They were intended only to help the jury understand the prosecution's theory of the case. Even if the remarks exceeded the permissible scope of opening statement, they did not deprive defendant of a fair trial.

## C. EXPERT TESTIMONY

Defendant argues that the prosecutor committed misconduct by questioning Mawhorter about her collection of DNA samples, and the trial court erred by overruling defense counsel's

objection to the testimony, because Mawhorter was not qualified to offer expert testimony regarding DNA evidence. We review the trial court's decision to allow the testimony for an abuse of discretion. *Duenaz*, 306 Mich App at 90.

At trial, Mawhorter testified that during her examination of AJ, she swabbed different areas to collect samples for DNA testing. Defendant challenges the following testimony offered by Mawhorter on redirect examination by the prosecutor:

> *Q*. The swabs that you talked about were the only ones that were indicated in this case?
>
> *A*. Correct.
>
> *Q*. Okay, and if there was something else indicated, you would have taken that swab too?
>
> *A*. Correct.
>
> *Q*. And based on your education and experience, is it—if you can answer and, if you can't, that's all right, but is it—are there things that are harder to get DNA from than other things?
>
> [*Defense Counsel*]: Judge, I'm going to have to object to that. That's a question for an expert.
>
> [*The Prosecutor*]: I can qualify her as an expert if you want to.
>
> [*Defense Counsel*]: Not in DNA, you can't.
>
> [*The Prosecutor*]: Based on her education and experience, does she know from her training as a SANE nurse if there are better percentage [sic]. That's all I'm asking, based on her training and experience.
>
> *THE COURT*: I'll overrule the objection.
>
> [*The Prosecutor*]: Okay. Thank you.
>
> *Q*. So, you can answer the question. I'll give it to you again. This—the indication in this case was that it was a digital penetration.
>
> *A*. Yes.
>
> *Q*. Based on your education and training and nothing else, is that a high percentage shot to find some DNA or not?
>
> *A*. I don't know the exact percentage, what it would be. I know that we have had problems and difficulties getting DNA collected from patients that we've worked with.

*Q.* With the digital penetration?

*A.* With any penetration.

*Q.* Okay, so it's not like a magic bullet. You don't always get it.

*A.* No.

*Q.* Okay, and the answer was no. You shook your head, but—

*A.* No. Sorry.

Under MRE 702, a witness who possesses specialized knowledge that will assist the trier of fact in understanding the evidence may be qualified as an expert on the basis of knowledge, skill, experience, training, or education. Although Mawhorter was not qualified to testify as an expert in the area of DNA analysis or testing, her testimony did not cover those subjects, but instead concerned her collection of DNA samples and her knowledge of the likelihood of recovering DNA through swabbing. Mawhorter explained that her work as a SANE nurse included collecting DNA evidence, that she had experience collecting samples for DNA testing, and although she was unable to offer a specific percentage, she knew from her education and experience that it is often difficult to collect DNA in cases involving digital penetration. Given Mawhorter's testimony, the trial court did not abuse its discretion by allowing her limited testimony related to the collection of DNA samples and the difficulties of collecting DNA during examinations. Further, because this testimony was admissible, there is no merit to defendant's related claim of prosecutorial misconduct, which may not be based on good-faith efforts to introduce evidence. *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999).

We affirm defendant's convictions and sentences, but remand for modification of defendant's judgment of sentence to specify that the CSC-I sentences are to be served consecutively to each other, but concurrently with the CSC-III sentences. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ David H. Sawyer
/s/ Jane M. Beckering